UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE L.,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br><br>    Defendant. | Case No. CV 18-5467-SP<br><br>MEMORANDUM OPINION AND ORDER |

# I.
# **<u>INTRODUCTION</u>**

On June 19, 2018, plaintiff Stephanie L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative

Law Judge ("ALJ") properly evaluated plaintiff's testimony. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 5-12; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-4.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly evaluate plaintiff's subjective complaints. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 50 years old on the alleged disability onset date, is a high school graduate. AR at 637, 667. Plaintiff has past relevant work as an administrative clerk and receptionist. *Id*. at 657.

On April 10, 2015 and September 3, 2015, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of May 19, 2014 due to tendonitis, high blood pressure, high cholesterol, carpal tunnel syndrome, herniated disc, spinal stenosis, pinched nerve, and anxiety. *Id*. at 667-68, 743. The Commissioner denied plaintiff's application initially, after which she filed a request for a hearing. *Id*. at 681-87.

On June 7, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 632-65. The ALJ also heard testimony from Jeff L. Clark, a vocational expert. *Id*. at 657-63. On October 25, 2017, the ALJ denied plaintiff's claims for benefits. *Id*. at 34-44.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 19, 2014, the alleged onset date. *Id*. at 37.

At step two, the ALJ found plaintiff suffered from the following severe

impairments: degenerative disease of the cervical spine with disc protrusions, stenosis, and radiculopathy; degenerative disc disease of the lumbar spine with disc protrusions, stenosis, radiculopathy, and facet arthropathy; osteophytes of the thoracic spine; right shoulder impingement and tendonitis; right adhesive capsilitis and degenerative changes of the right acromioclavicular joint; right carpal tunnel syndrome; bilateral lateral epicondylitis; left nerve ulnar entrapment at the elbow; left carpal tunnel syndrome and cubital tunnel syndrome; status post left ulner nerve transposition and carpal tunnel releases; bilateral de Quervains tenosynovitis; status post bilateral tendon releases; small nerve fiber neuropathy; left trigger thumb status post release; hypertension; and hyperlipidemia. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 39.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform less than the full range of light work, with the limitations that plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, and scaffolds; and never work around protected heights. *Id*. With regard to the bilateral upper extremities, the ALJ also precluded plaintiff from above shoulder work, including overhead reaching, but determined she could engage in frequent

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

handling and fingering. *Id*.

The ALJ found, at step four, that plaintiff could perform her past relevant work as an administrative clerk and receptionist. *Id*. at 42.

In the alternative, the ALJ found at step five, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including food preparation worker, hostess, and counter clerk. *Id.* at 43-44. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 44.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## <u>DISCUSSION</u>

Plaintiff contends the ALJ failed to properly evaluate her testimony. P. Mem. at 5-12. Specifically, plaintiff argues the ALJ's sole reason for discounting her testimony was a lack of supporting objective medical evidence, and that this by itself was not clear and convincing. *Id*.

At the hearing, plaintiff testified she suffered from neck, shoulder, back, hand, and elbow pain. *See* AR at 644-45, 650. Plaintiff stated the pain was sometimes severe and sometimes tolerable. *Id*. at 645. Plaintiff was unable to sit for longer periods and did not drive. *See id* at 650-51. She was able to stand for approximately twenty minutes at a time, could walk about a block, and could not lift a gallon of milk. *See id*. at 651-53.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an

5

underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 39. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ provided four reasons for discounting plaintiff's testimony: (1) her alleged symptoms were inconsistent with the objective medical evidence; (2) she received mild and conservative care; (3) she made an inconsistent statement; and (4) the epidural injections provided plaintiff three weeks of relief. *See id*. at 39-42. Although the ALJ only expressly cited one reason for finding plaintiff's testimony less credible – the lack of objective medical evidence to support the symptoms – the ALJ included the latter three reasons in his credibility discussion and they can reasonably be inferred as additional grounds for the adverse credibility finding. *See id.*; *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion).

The ALJ's first reason for finding plaintiff's testimony less than fully credible was her subjective complaints were not supported by the objective medical evidence. *See* AR at 39-42; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the lack of corroborative objective medical evidence may be one factor in evaluating a claimant's credibility). The ALJ relied on a selective citation to a few findings and Dr. Marvin Perer's opinion that plaintiff can perform medium work to support his conclusion. The citations and Dr. Perer's opinion are not substantial evidence.

As an initial matter, to the extent the ALJ relied on Dr. Marvin Perer's opinion that plaintiff was capable of medium work to discount her testimony concerning her lumbar and cervical spine, the reliance was misplaced. *See* AR at 40, 1030-35. Dr. Perer reviewed only five or six days of treatment notes, some of which were from prior to the alleged onset of disability or unrelated, and examined plaintiff once. *Id.* at 894-95, 912-13, 914-24, 1030. Noting Dr. Perer, a consultative internist, examined plaintiff on one occasion and did not review her medical records, the ALJ only gave Dr. Perer's opinion partial weight. *See id.* at 41, 1030; *see also McKinzie v. Colvin*, 634 Fed. Appx. 177, 179-80 (9th Cir. 2015) (failure to review a claimant's medical record may be a legitimate reason for discounting a physician's opinion). Yet the ALJ indicated he relied on Dr. Perer's opinion that plaintiff is capable of medium work as evidence that plaintiff's symptoms are not credible. *See* AR at 40. The ALJ cannot have it both ways.

As for the objective medical findings, the ALJ acknowledged the medical imaging clearly indicates plaintiff suffered from, among other things, disc dessication and herniation at multiple levels, severe central canal stenosis, moderate to severe neural foraminal stenosis, radiculopathy, right shoulder impingement, right shoulder tendinosis, and cysts. *See id.* at 516, 518, 562-67, 571-72, 1683. Nevertheless, the ALJ determined plaintiff's symptoms were less

than credible due to some normal findings. *Id*. at 40.

With respect to plaintiff's cervical and lumbar pain, the ALJ noted that plaintiff had normal range or motion in his cervical and lumbar spine in December 2014 and July 2015. *Id.* The ALJ also relied on three additional findings from the July 2015 consultative examination that plaintiff: had a normal gait; had a negative straight leg raise test; and could get on and off the examination table without difficulty. *Id*. Here, the ALJ selectively referred to some normal findings from two days while ignoring the remaining objective evidence. In addition to the imaging, other treating and examining physicians observed plaintiff had, among other things, tenderness, decreased range of motion, spasm in the lumbar and cervical spine, and positive straight leg raise tests. *See, e.g., id*. at 529, 1656, 1695, 1781, 2034. Although physicians also observed plaintiff had a normal range of motion in her neck on occasion, it was often achieved with pain. *See, e.g., id*. at 584, 1430. Moreover, other treating physicians observed similar findings of normal range of motion or gait, but concluded plaintiff required surgery. *See, e.g. id*. at 581, 589. The fact that plaintiff sometimes had some normal findings was therefore inadequate to discount her testimony, particularly in light of her complete medical record. *See Schow v. Astrue*, 272 Fed. Appx. 647, 652-53 (9th Cir. 2008) (even with the inclusion of some normal findings, the ALJ's reasons were inadequate to support his credibility determination). Indeed, plaintiff's occasional normal findings were consistent with her testimony that her pain level fluctuated day to day. *See* AR at 645.

Similarly, with respect to plaintiff's complaints about her right shoulder, the ALJ cited an April 2015 finding that plaintiff had no weakness and full strength, and the consultative examiner's findings that plaintiff had no tenderness or swelling. *See id*. at 40. Again, the record is replete with findings of decreased range of motion, pain, and tenderness, as well as a recommendation for surgery.

*See, e.g., id*. at 529, 605, 1064, 1263, 1485. Indeed, the ALJ acknowledges Dr. Perer even observed a decreased range of motion. *See id*. at 40, 1033. Looking at the medical record as a whole, on balance, it cannot be said that the objective medical evidence did not support plaintiff's complaints about her right shoulder.

Moreover, although the lack of objective medical evidence to support allegations of limitations is a factor that may be considered when evaluating credibility, it is insufficient by itself. *See Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain") . Thus, even assuming the ALJ correctly found the plaintiff's symptoms were not supported by the objective medical evidence, it cannot constitute a clear and convincing reason supported by substantial evidence if it is the only reason for the adverse finding.

Here, the ALJ provided three other reasons for the adverse credibility finding, but none are supported by the evidence. The second reason the ALJ gave was that plaintiff received mild and conservative treatment. AR at 40; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). Plaintiff was treated with acupuncture, physical therapy, chiropractic care, pain medications including narcotics, epidural injections, and surgery. *See, e.g.,* AR at 126, 199-201, 581, 605. While pain medication, acupuncture, physical therapy, and chiropractic care are considered conservative, the use of narcotic medication in conjunction with epidural injections is not. *See, e.g., Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Tommasetti*, 533 F.3d at 1040 (characterizing physical therapy

9

as conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). Moreover, surgery is unquestionably not mild and conservative. Plaintiff underwent surgery for her carpal tunnel syndrome and was recommended surgery for her cervical spine, lumbar spine, and right shoulder. AR at 339, 589, 605, 648, 2482. Although the insurance company denied authorization for the right shoulder surgery, the fact remains that surgery was recommended as a course of treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). Therefore, the record plainly reflects plaintiff did not receive only mild and conservative treatment.

The third reason the ALJ provided for finding plaintiff's testimony not credible was she made an inconsistent statement. AR at 40; *see Bunnell*, 947 F.2d at 346 (an ALJ "may discredit the claimant's allegations based on inconsistencies"). Specifically, the ALJ noted plaintiff testified epidural injections did not help her pain, but had previously reported that she had three weeks of relief after receiving a lumbar epidural injection.[2] AR at 40, 638, 642, 1996. This inconsistency was not a clear and convincing reason to discount plaintiff's testimony. First, it is unclear that plaintiff's testimony was inconsistent with her earlier report. The question itself was open to interpretation. Plaintiff could have reasonably interpreted the ALJ as asking whether the injections provided significant or long term relief, which the record reflects it did not. Second, to the extent that plaintiff's testimony was inconsistent with her earlier report, it was

---

[2] By the times of the June 7, 2017 hearing, plaintiff had already received three epidural injections in her lumbar spine, three epidural injections in her cervical spine, and one or two injections in the shoulder. *See* AR at 126, 643.

10

minor. *See Gonzalez v. Astrue*, 253 Fed. Appx. 654, 655 (9th Cir. 2007) (holding that an inconsistency relating to claimant's education was minor and not material); *Rocha v. Astrue*, 2010 W L797160, at *5 (C.D. Cal. Mar. 5, 2010) (finding that minor inconsistencies in daily activities did not impugn claimant's credibility). The fact that plaintiff testified the injections did not help rather than testifying they provided three weeks of relief was minor given that she consistently stated that the injections did not provide significant long-term relief.

Finally, the temporary relief plaintiff experienced from the injections was not a basis for an adverse credibility finding. *See, e.g., Salcido v. Saul*, 2019 WL 2516875, at *4 (C.D. Cal. June 18, 2019) (ALJ improperly discounted plaintiff's credibility because she reported improvements when the improvements were only temporary); *Marshall v. Berryhill*, 2017 WL 2060658, at *14 (S.D. Cal. May 12, 2017) (temporary relief does not constitute sustained improvement in symptoms that justifies discrediting a claimant's testimony); *Strange v. Colvin*, 2016 WL 226376, at *7 (C.D. Cal. Jan. 19, 2017) ("[T]emporary relief is not a valid reason to find plaintiff less than credible.").

Accordingly, the ALJ failed to cite clear and convincing reasons supported by substantial evidence for his adverse credibility finding. Contrary to the ALJ's determination, the objective medical evidence supported plaintiff's alleged symptoms, plaintiff did not receive conservative treatment, plaintiff's inconsistent statement was minor, and temporary relief was not a valid reason to discount.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been

11

fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve the outstanding issue. On remand, the ALJ shall reconsider plaintiff's credibility and either accept her testimony or provide clear and convincing reasons for rejecting it. The ALJ shall then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

//
//
//

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 27, 2019



SHERI PYM
United States Magistrate Judge